June Term, 1861.

Newman et al.
v.
The State.

---

## Newman and another vs. The State.

It is the better, if not the only proper practice, to demur to a plea in abatement in a criminal case, if it is considered insufficient, rather than to move to strike it from the files as a nullity.

But where a portion of such a plea was bad, the judgment of the court below was not reversed although that part of the plea was not demurred to but was stricken from the files on motion.

Such a plea is not amendable.

Whether a court may, on motion, order a plea in abatement in a criminal case to be stricken from the files on the ground that it is not verified as required by the statute (sec. 13, chap. 177, R. S. 1858), is not decided in this case.

Pleas in abatement, to be good, must be framed with great accuracy and precision, and must be certain to every intent.

A plea in abatement in a criminal action, which merely avers that the grand jury which found the indictment was not drawn and summoned according to law, without stating more particularly what irregularity intervened in drawing and summoning such grand jury, or in what manner it was drawn and summoned, is bad for uncertainty.

After the panel of grand jurors who had been originally summoned, had been exhausted, and there was not a sufficient number to constitute a grand jury, the court ordered a special *venire* to be issued for the deficiency, and after the same had been issued by the clerk, and while it lay upon the table in the presence of the sheriff, but before it had been actually placed in his hands, the sheriff called a person present as a member of the grand jury. The clerk afterwards handed the *venire* to the sheriff, who indorsed his return thereon, and handed the same back to the clerk. *Held*, that this was a sufficient compliance with the provisions of sections 14 and 36, chapter 118, R. S., 1858.

A person indicted for a crime may object to the illegal organization of the grand jury which found the indictment—to the incompetency of the persons composing it, or to any irregularity in summoning a talesman, by a plea in abatement to the indictment.

A felony may be charged in different ways in several counts of an indictment, for the purpose of meeting the evidence as it may come out upon the trial, each count purporting, on the face of the indictment, to be for a distinct and separate offense; and the jury may find a general verdict upon all the counts; and this will form no ground for arresting the judgment.

The court should not, without necessity, intend the several counts of an indictment to be for the same offense.

The first count of an indictment was for feloniously taking, &c., one mare, one single harness and one buggy; the second, for feloniously taking, &c., one mare; the third, for feloniously taking, &c., one buggy and one single harness; the fourth, for feloniously taking, &c., one mare, one single harness and one buggy, "the said harness being then and there on the said mare, and the said mare being then and there hitched to the said buggy." The alleged values of the several articles were the same in the different counts, and the word "other" was not used in any one of the last three counts before the names of the articles alleged to have been taken. *Held*, that the several counts must be regarded as technically charging different offenses, and that the indictment was good.

ERROR to the Circuit Court for *La Crosse* county.

*John* and *William Newman* were indicted for theft. The

indictment contained four counts. The articles charged to
have been feloniously taken, &c., were described in the first
count as one mare, one single harness and one buggy; in
the second count, as one mare; in the third, as one buggy
and one single harness; in the fourth, as one mare, one sin-
gle harness and one buggy, "the said harness being then and
there on the said mare, and the said mare being then and
there hitched to the said buggy." The specifications of
time and place, and of the ownership of the property, and
the alleged values of the several articles, were the same in the
several counts.

June Term,
1861.

NEWMAN et al.
v.
THE STATE.

The other facts in the case are stated sufficiently in the
opinion of the court.

*Montgomery & Tyler*, for appellant:

1. The plea in abatement was an entirety, and if any part
of it was good, the motion to strike out should have been
overruled. 2. The plea was sufficient. *Rawls vs. The State*, 8
Smedes and Marsh., 599. 3. A plea in abatement is the
proper mode of objecting to the illegal construction of the
grand jury. Wharton's Am. Cr. Law, § 468; *State vs. Wil-
liams*, 5 Porter, 130; *State vs. Clarissa*, 11 Ala., 57; *State vs.
Greenwood*, 5 Porter, 474. 4. If the grand jury are not
drawn, summoned and impannelled according to the provis-
ions of the statutes, they cannot find a valid indictment.
*Vattier vs. The State*, 4 Blackf., 73; *U. S. vs. Cropper*, 1 Morris,
(Iowa) 190; *Stokes vs. The State*, 24 Miss., 621; *State vs. Freeman*,
6 Blackf., 248. 5. The court erred in deciding that Justin
Jacobs was legally summoned upon said jury. 6. The
court erred in overruling the motion in arrest of judgment.
*Wilson vs. The State*, 20 Ohio, 26; 1 Archbold's Cr. Pl., 93;
Chitty's Cr. Law, 249; Wharton's Am. Cr. Law, § 426;
Adolph. & Ellis, New Series, 800.

*J. O. Culver*, Assistant Attorney General, for the state:

Objections to the personal qualifications of grand jurors,
or the legality of the return, cannot affect an indictment af-
ter it has been received and filed by the court. 3 Wend.,
314; 9 Mass., 107; Wharton's Cr. Law, § 472. 2. If the
court shall not adopt the doctrine thus broadly stated by
the authorities just cited, at least it will hold that no objec-

June Term,
1861.

Newman et al.
v.
The State.

tion to the manner in which a grand jury is constituted will be entertained after the indictment is filed in court, if a proper number of qualified and unexceptionable men are sworn on the jury, and there has been no fraud or collusion in placing any one on the panel, and no injury is alleged to have been suffered. 1 Chitty's Cr. Law, 308–9. 3. The juror Jacobs was properly summoned. 6 Mass., 486; 2 Pick., 550; 1 id., 196. 4. The plea in abatement was double; and the court properly struck one plea out. 5. The plea struck out was bad, because it did not present facts sufficient for the court to determine the question on demurrer. It should have shown wherein and how the law had been violated—how the jury *was* drawn. 6. As to the objection that the indictment charged a separate and distinct larceny in each count, counsel cited *Ketchingman vs. The State*, 6 Wis., 426; 11 Adolph. & Ellis (N. S.), 800; Wharton's Cr. Law, § 395; 20 Pick., 356; 8 Wend., 211; Arch. Pl. and Ev., 21, 96; 15 Pick., 273; 1 Park. Cr. R., 202, 246; 7 Iredell, 275; 43 Me., 282; *Manly vs. State*, 7 Md., 135.

December 11.     *By the Court*, COLE, J.  The plaintiffs in error were indicted at the November term of the circuit court of La Crosse county, 1860, for the crime of larceny. To the indictment they interposed a plea in abatement, alleging in substance that the grand jurors therein named, by whom the indictment was found and returned into court, were not, nor were any of them, at the time they so acted, and at the time the indictment was found and returned, duly and legally qualified to act as grand jurors, in this, that the said grand jurors, or any of them, had not been drawn by the clerk of the county of La Crosse in pursuance of the statutes in such case made and provided. It was also averred that the grand jurors by whom the indictment was found, were not summoned by the sheriff pursuant to law; and further that one of the grand jurors, Justin Jacobs, by whom the indictment was found, was never summoned in any manner whatever, but placed himself upon the grand jury at the request of a stranger, such stranger being neither the judge of the circuit

court, nor clerk, nor any person authorized by law to designate a grand juror.

June Term, 1861.

Newman et al.
v.
The State.

The district attorney moved to strike the plea from the files as a nullity, which motion was sustained, except as to so much of the plea as had reference to the action of Justin Jacobs, one of the grand jurors empannelled and sworn, in placing himself upon the jury; and as to that part of the plea, an issue of fact was made, which was tried by the court upon the evidence produced, and found against the plaintiffs in error. They then pleaded not guilty to the indictment, were tried and convicted. Motions for a new trial and in arrest of judgment, were made, which were overruled by the court.

Several errors are assigned here to the rulings of the circuit court in disposing of the plea in abatement, and in refusing instructions asked for by the plaintiffs in error, which we will now proceed to notice.

In the first place it is insisted that the circuit court erred in sustaining the motion to strike out a portion of the plea in abatement. No exception is taken to the particular practice adopted in moving to strike the plea from the files as a nullity instead of testing its sufficiency by a demurrer. But it is claimed that the matter stricken out contained a good and sufficient answer in avoidance to the indictment, and was set forth by apt and proper averments. And the question as to the sufficiency of that portion of the plea stricken out has been argued by counsel in the same light as though it had been demurred to, and we will so consider it. At the same time we will state that we deem it to be the better, if not the only correct and proper practice, to demur to a plea in abatement in a criminal case, if it is considered insufficient, rather than to move to strike it from the files as a nullity. In *Rex vs. Grainger*, 3 Burrows, 1617, a plea in abatement to an indictment was set aside on motion because it was not verified. Our statute provides that when a plea in abatement or other dilatory plea to an indictment, shall be offered, the court may disregard it or refuse to receive it until the truth thereof shall be proved by affidavit or other evidence. Section 13, chap. 177, R. S., 1858. The plea in this case

June Term,
1861.

Newman et al.
v.
The State.

was not verified, as it should have been, and if an exception had been taken to it on that ground, perhaps the court might have been authorized to order it stricken from the files. But no objection was taken to the plea because it was not verified, and if there had been, whether the court might have ordered it to be stricken off on motion, under the above provisions of the statute, we will not express any opinion. We have already indicated our views in regard to the practice generally to be adopted, that the question as to the sufficiency of a plea in abatement in a criminal case had better be raised by a demurrer than by a motion to strike it from the files. *The King vs. Cooke*, 2 B. & C., 618 (9 E. C. L., 201.) Still the district attorney saw fit to adopt a different practice here, and no exception is taken to that practice by the counsel for the plaintiffs in error, and really it may be said that they could not possibly be prejudiced by it, as the case seems to have been considered in the court below, unless the matter stricken out would be held sufficient on demurrer. For we suppose the rule to be well established that a plea in abatement, as well in a criminal as in a civil case, is not amendable (*The King vs. Cooke*, 9 E. C. L. R., 263), and therefore if the matter stricken out was insufficient, and showed no reason why the plaintiffs in error should not answer to the indictment preferred against them, then it is not very material or important to them how this question as to the sufficiency of the pleading was raised.

In the present case we are of the opinion that the matter stated and relied on in the plea in abatement, which was stricken out by the court, was insufficient. It is, in substance, that the grand jury which found the indictment was not drawn and summoned according to law. But what irregularity intervened in drawing and summoning the grand jury, the plea does not inform us. Whether it was some slight and unimportant departure from the statute in respect to drawing and summoning the grand jury—such an irregularity as could not possibly affect the panel—or whether the officers were guilty of some gross misconduct in selecting the jury, does not appear. Indeed it nowhere appears from the plea how, when and in what manner, the grand jurors

June Term,
1861.

Newman et al.
v.
The State.

were improperly drawn and summoned. The plea is too indefinite and uncertain in this particular. It should inform the court what the irregularity was. It is not alleged that the individuals who° composed the grand jury, or that any of them, did not possess the qualifications required by the statute. It is merely averred that they were not drawn by the clerk and summoned by the sheriff pursuant to law, and this is all there is of it. Now it appears to us that this is clearly insufficient, and that when a party pleads in abatement to an indictment that the grand jury which found the indictment was not properly constituted, he should state what the irregularity is. For it is an elementary rule that pleas in abatement must be framed with great accuracy and precision, and must be certain to every intent, otherwise they are bad. 1 Chitty on Pleadings—Of Pleas in Abatement, p. 443, et seq. ; *King vs. Cooke,* 2 B. & C., 871, (9 E. C. L., 263). We therefore think that portion of the plea in abatement which was stricken out by the court was bad for uncertainty, and that the court would have been compelled to have so decided on a demurrer. *The State vs. Bryant,* 10 Yerger, 527.

It is further insisted that the circuit court incorrectly found the issue against the plaintiffs in error, in respect to the grand juror Justin Jacobs, who, it was alleged, placed himself voluntarily among the grand jury without being summoned. Upon this point the record shows that after the panel of grand jurors who had been originally summoned, had been exhausted, and there was not a sufficient number to constitute a grand jury, the court ordered a special *venire* to be issued for the deficiency, and that after the same had been issued by the clerk, and while the same lay on the table, in the presence of the sheriff, but before it had been actually placed in his hands, the sheriff called the said Justin Jacobs as a member of the grand jury ; that afterwards the clerk handed the sheriff the *venire,* who then indorsed his return thereon and handed the same back to the clerk. In case of a deficiency of grand or petit jury, our statute declares that the court may direct the clerk to issue a *venire* to the sheriff or other officer, to summon a sufficient number

June Term,
1861.

Newman et al.
v.
The State.

of talesmen for such grand or petit jury (sections 14 and 36, chapter 118, R. S., 1858); and that was all that was done in the present case. The juror Jacobs was returned from the by-standers to complete a deficient panel, and he took his seat among the grand jury. The particular objection taken to the manner in which he was summoned is, that the sheriff did not actually take the *venire* in his hands and walk up to the juror and read it to him; but we do not deem that necessary. The juror was in court, and was ordered by the sheriff to take his place among the grand jury by virtue of the special *venire* which the clerk had issued under the direction of the court, and he did so take his place, and we can see no objection to him. He cannot be said to be an interloper, or a person on the jury by his own voluntary act, without having been summoned by an officer duly authorized. *Commonwealth vs. Lippard*, 6 S. & R., 395.

It was claimed and insisted on the part of the attorney general, that objections to the qualifications of grand jurors, or to any irregularity in summoning, selecting or swearing them, could not be raised or considered either by a plea in abatement or motion to quash, after an indictment had once been found and returned and filed in court. There are certainly very respectable authorities which have so decided (*Commonwealth vs. Smith*, 9 Mass., 104; *People vs. Jewett*, 3 Wend., 314); but we think these cases are unsound in reason and principle, and that the current of authorities is the other way. 2 Hale's Pleas of the Crown, 155; 2 Hawkins' Pleas of the Crown, Bk. 2, chap. 25, sections 17 and 18; *Commonwealth vs. Parker et al.*, 2 Pick., 550, 562; *State vs. Symonds*, 36 Maine, 128; *McQuillen vs. The State of Mississippi*, 8 S. & M., 587; *Rawls vs. The State of Mississippi*, id., 599. There does not appear to be any conflict of authority upon the position that a person in court against whom an indictment is about to be preferred, may challenge for cause (*People vs. Jewett, supra; Hudson vs. The State*, 1 Blackf., 317; *Ross vs. The State*, id., 390; *Thayer vs. The People*, 2 Doug. (Mich.), 417); and our statute, as if to place the matter beyond doubt, expressly secures that right to the accused. Section 16, chap. 118. And we can see no reason

June Term,
1861.

Newman et al.;
v.
The State.

or ground for saying that a person in court, held to answer a criminal charge, may challenge the array or polls on account of the illegal constitution of the grand jury, but that one not in court, and who knows nothing about any charge of a criminal character being made against him until the indictment is actually found and filed, cannot except to a defective organization of the jury.   Such a distinction does not appear to be just or founded in reason and principle.   Our bill of rights declares that no person shall be held to answer for a criminal offense unless on. the presentment or indictment of a grand jury, except in the cases therein mentioned. Sec. 8, Art. I.   And our statute fully directs and points out who shall be competent persons to constitute a grand jury, and how they shall be selected and chosen.   If the grand jury is not constituted according to law, or is composed of persons not possessing the requisite qualifications, a person accused of the commission of crime ought to have the opportunity of raising the objection.   To say that he must object to the jurors before they are sworn and before the indictment is presented, is simply denying, in many cases, the right to object at all.   And we must therefore hold that a person may except to the ill*** organization of a grand jury, to the incompetency of the persons composing it, or to any irregularity in summoning a talesman, by a proper plea in abatement to the indictment.   But such a plea must be interposed at the proper time, and must state the irregularity or defect complained of, by apt and sufficient averments.

The objection taken to the refusal of the court to charge the jury "that the admissions and confessions of the defendants, unsupport d by other evidence, are insufficient to convict the defendants," has not been relied on here.   The evidence is not returned to this court, and we cannot see the full bearing of such an instruction.   We deem it to be erroneous as a proposition of law, and that it was properly refused.

On the motion in arrest of judgment, it was argued and insisted, and the same point is relied on in this court, that the indictment was informal and defective for charging the same offense in separate and distinct counts.

June Term, 1861.

NEWMAN et al.
v.
THE STATE.

In answer to this objection, we cannot express our views more satisfactorily than in the language of Chancellor WALWORTH, when meeting the same question in *Kane vs. The People*, 8 Wend., 203–211, who says: "It is every day's practice to charge a felony in different ways in several counts, for the purpose of meeting the evidence as it may come out on the trial; each of the counts, on the face of the indictment, purports to be for a distinct and separate offense, and very frequently the jury find a general verdict on all the counts, although only one offense is proved; but no one ever supposed that formed a ground for arresting the judgment." The indictment in the present case contains four counts, and although the word "other" is not used in the three last counts, still we think they must be considered as technically charging different offenses, but evidently relating to the same transaction. This we suppose to be admissible in order to meet the proof. The counts in this indictment do not necessarily appear to be for the same offense, and without necessity the court should not intend them to be so. We have been referred to the case of *Campbell et al. vs The Queen*, 11 Adolph. & Ellis, 799 (63 Eng. C. L.), where the court say that one offense, whether felonious or not, could not properly be charged twice over, whether in one indictment or two, and that an objection to an indictment on that ground was available on a motion in arrest of judgment. But the court immediately remarks that it would, if possible, hold the counts not to be for the same offense, and that the omission of the word "other" would not of itself make them the same, though the insertion of the word "other" would make them different. Within the rule here laid down, we think the indictment in this case is not obnoxious to the objection taken to it. See 2 Bennett & Head's Leading Criminal Cases, 502, note; *State vs. Canterbury; Same vs. Boscawen*, 8 Foster, 195–226.

The judgment of the circuit court is therefore affirmed.